# United States Court of Appeals
## For the First Circuit

---

No. 03-2676

UNITED STATES OF AMERICA

Appellee,

v.

MALE JUVENILE E.L.C.,

Defendant/Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

---

Before

Boudin, Chief Judge,

Torruella, Circuit Judge,

Carter,*Senior District Judge.

---

Salvador Perez-Mayol for appellant Male Juvenile E.L.C.
Nelson Perez-Sosa, Assistant United States Attorney, with whom
H.S. Garcia, United States Attorney, were on brief for appellee.

---

February 3, 2005

---

*Of the District of Maine, sitting by designation.

**CARTER**, <u>Senior District Judge</u>.

## I. BACKGROUND

On April 24, 2002, Jose Oscar Rodriguez-Reyes, a police officer employed by the United States Department of Veterans Affairs, was shot and killed while performing his duties as a uniformed guard at the entrance gate of the Veterans Affairs Hospital in Puerto Rico. A police investigation revealed that a juvenile male, E.L.C., and another man, Carlos Ayala Lopez, were armed and approached the guard shack at the entrance of the veterans hospital. Their plan appears to have been to take Officer Rodriguez's gun. Moments after they arrived at the guard shack, Officer Rodriguez was shot and killed.

Five days after officer Rodriguez was killed, on April 29, 2002, a man, described only as a Dominican national, was also killed in the course of a robbery. On May 10, 2002, E.L.C. was arrested and charged with four acts of delinquency before the court for the Superior Part of Carolina, Puerto Rico, related to the attempted robbery and murder of the Dominican man. At the time of his arrest, E.L.C. was in possession of a gun, which ballistic tests later revealed was the same gun that had killed Officer Rodriguez and the Dominican man on April 29, 2002. E.L.C. was adjudicated and sentenced in the Commonwealth court to

18 months in the Humacao Detention Center on the charges arising out of the robbery and murder of the Dominican man.

In March 2003, E.L.C. was federally charged in a two-count sealed Information with aiding and abetting in the unlawful killing of a federal police officer. Specifically, the Information charged the killing of a federal officer in an attempt to perpetrate a robbery that, if he were an adult, would be in violation of 18 U.S.C. §§ 1111, 1114, 2, and carrying and using a weapon in relation to a crime of violence that, if he were an adult, would be in violation of 18 U.S.C. §§ 924(c) & (j), 2.

The United States Attorney certified that E.L.C. was a juvenile and that there was a "substantial federal interest" in the case and the offenses warranted the exercise of federal jurisdiction. Appellant was fifteen years and 9 months old at the time of the charged offense. The Government moved to transfer E.L.C. to adult status for prosecution. E.L.C. objected to the transfer. After receiving the Puerto Rico juvenile court's records and the psychological evaluation report, the magistrate judge held a hearing on the government's motion to transfer E.L.C. to the district court's adult criminal jurisdiction pursuant to 18 U.S.C. § 5032. After hearing from the clinical psychologist who evaluated E.L.C. and the FBI

Special Agent involved in the investigation of Officer Rodriguez's death, the magistrate judge issued a Report and Recommendation, which recommended that E.L.C. be transferred to adult status for prosecution. The district court thereafter denied E.L.C.'s objections to the Recommended Decision and adopted the magistrate judge's recommendation that E.L.C. be transferred to adult status.[1] Appellant subsequently filed this expedited interlocutory appeal challenging the district court's transfer order.

## II. DISCUSSION

This Court has jurisdiction over this case under 28 U.S.C. § 1291.

The decision to transfer a juvenile to be prosecuted as an adult is reviewed for abuse of discretion. United States v. Smith, 178 F.3d 22, 26 (1st Cir. 1999). "The district court abuses its discretion 'when it fails to make the required ... findings or where the findings it does make are clearly erroneous.'" United States v. Doe, 94 F.3d 532, 536 (9th Cir. 1996)(quoting United States v. Nelson, 68 F.3d 583, 588 (2d Cir. 1995)).

---

[1]The District Court adopted the recommendation of the Magistrate Judge without comment. All references will, therefore, be to the Magistrate Judge's Report and Recommended Decision.

The purpose of the federal juvenile delinquency process is to "remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation." United States v. Female Juvenile, A.F.S., 377 F.3d 27, 32-33 (1st Cir. 2004)(quoting United States v. Brian N., 900 F.2d 218, 220 (10th Cir. 1990)(citations omitted)). The district court must balance these important interests against "the need to protect the public from violent and dangerous individuals." See United States v. Juvenile Male # 1, 47 F.3d 68, 71 (2d Cir. 1995); see also United States v. One Juvenile Male, 40 F.3d 841, 844 (6th Cir. 1994). There is a presumption in favor of juvenile adjudication and, therefore, the burden is on the government to establish that transfer to adult status is warranted. Female Juvenile A.F.S., 377 F.3d at 32 (quoting Juvenile Male # 1, 47 F.3d at 71).

A juvenile who is alleged to have committed an act which, if committed by an adult, would be a felony that is a crime of violence, may be proceeded against as an adult by means of a transfer to adult court if the district court determines that it would be "in the interest of justice" to do so. 18 U.S.C. § 5032. In determining whether a transfer would be in the interest of justice, Congress provided six factors to guide the district court:

[1] the age and social background of the juvenile; [2] the nature of the alleged offense; [3] the extent and nature of the juvenile's prior delinquency record; [4] the juvenile's present intellectual development and psychological maturity; [5] the nature of past treatment efforts and the juvenile's response to such efforts; [6] the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032. The district court must consider and make findings with respect to each factor. Id. The district court need not find that each factor weighs in favor of transfer in order to grant the Government's motion. Other Circuit Courts, including this one, have held that the district court need not even find that a majority of factors weigh in favor of the prevailing party, as "it is not required to give equal weight to each factor but 'may balance them as it deems appropriate.'" United States v. Leon D.M., 132 F.3d 583, 589 (10th Cir. 1997)(quoting Juvenile Male # 1, 47 F.3d at 71); see also United States v. Wilson, 149 F.3d 610, 614 (7th Cir. 1998); United States v. Juvenile JG, 139 F.3d 584, 586-87 (8th Cir. 1998); Leon D.M., 132 F.3d at 589; United States v. Wellington, 102 F.3d 499, 506 (11th Cir. 1996); Doe, 94 F.3d at 537; Juvenile Male # 1, 47 F.3d at 71; United States v. One Juvenile Male, 40 F.3d 841, 845-46 (6th Cir. 1994); United States v. A.R., 38 F.3d 699, 705 (3d Cir. 1994); United States v. Doe, 871 F.2d 1248, 1254-55 (5th

Cir. 1989); <u>United States</u> v. <u>Hemmer</u>, 729 F.2d 10, 17 (1st Cir. 1984).

The decision on whether to transfer a young individual to adult status for prosecution is in most instances a difficult one as it can have severe consequences for a juvenile's rehabilitation. Although the court must address each factor, the district court "is not required to state whether each specific factor favors or disfavors transfer." <u>Leon D.M.</u>, 132 F.3d at 589 (citing <u>United States</u> v. <u>Three Male Juveniles</u>, 49 F.3d 1058, 1061 (5th Cir. 1995)). Rather, the court must balance the evidence before it, weighing each factor as it sees fit, to determine whether a transfer to adult status best serves "the interest of justice." 18 U.S.C. § 5032. The analytical balancing of the transfer factors cannot be expressed mathematically. <u>See</u> <u>Wilson</u>, 149 F.3d at 614.

A review of the magistrate judge's decision reveals that she considered each of the factors set forth in 18 U.S.C. § 5032. Because the magistrate judge made the requisite findings, the first issue for this Court to consider is whether any of those findings are clearly erroneous. To that end, we have reviewed the transcript of the transfer hearing and the written report of the clinical psychologist who examined E.L.C. We conclude that none of the magistrate judge's findings on the six factors show

clear error, and the factors were reasonably weighed in the circumstances of this case.

E.L.C. argues that the magistrate judge erroneously considered his participation in the robbery and murder of the Dominican man, which occurred subsequent to the murder of Officer Rodriguez, in weighing the third transfer factor – the extent and nature of the juvenile's prior delinquency record. E.L.C. presented a similar argument – that subsequent bad acts cannot be considered in weighing a defendant's prior delinquency record – before the magistrate judge and in response the magistrate judge stated that "even if not to be considered under the 'prior conviction' category, [it] may be properly considered within E.L.C.'s social background and his responses to treatment efforts." Report and Recommendation at 7. The magistrate judge concluded that "under either factor, the actions underlying the state charges constitutes conduct that favors transfer." Id.

We do not think that "prior delinquency record" can plausibly be interpreted to encompass criminal conduct that occurred after the charged acts. However, section 5032's requirement that mentation be given to all six named transfer factors, does not preclude the district court from considering other unnamed factors that are relevant to the determination of whether the juvenile's transfer would be in "the interest of

justice." In this case, the seriousness and similarity of the subsequent criminal acts to the circumstances of the charged offenses, as well as the fact that those acts occurred just five days after Officer Rodriguez was killed, justify their consideration in the overall interest of justice assessment.[2]

The Court notes that although the magistrate judge discussed the subsequent criminal conduct under the heading of "prior delinquency," it appears that she concluded that it was appropriate to consider subsequent criminal activity under either the social background factor or responses to treatment efforts factor.[3] However, even if it was considered under the prior juvenile delinquency category, there was no error. This is so because the Court finds that E.L.C.'s criminal conduct that occurred subsequent to the crime charged in this case was properly considered as bearing on E.L.C.'s potential for rehabilitation in the juvenile justice system. Recognizing that the transfer factors are weighed and not numerically tallied, the

---

[2]Our holding, on the exceptional facts of this case, should not be understood to require the consideration of subsequent criminal acts in all circumstances.

[3]This Court considers that the plain language of either of two transfer factors – "the juvenile's present intellectual development and psychological maturity," and "the age and social background of the juvenile," – is broad enough to authorize the consideration of evidence regarding E.L.C.'s criminal activities subsequent to the charged offense.

-9-

inaccurate categorization of the consideration of the conduct does not result in error.

Appellant E.L.C. also argues that the magistrate judge gave excessive weight to the nature of the alleged offense. As discussed above, the weight to be given each factor is left to the discretion of the district court. The magistrate judge considered and made factual findings as to all six statutory factors.[4] None of those factual findings is clearly erroneous. The gravity of the crimes charged warrants their consideration as a weighted factor in the transfer analysis. Even if the magistrate judge relied primarily on the serious nature of the charged offense conduct, such reliance does not invalidate the analysis. The magistrate judge did not abuse her discretion under

---

[4]One week prior to oral argument in this case, Appellant filed a "Motion to Complement Appellant's Argument During Scheduled Hearing." With one exception, the Motion asserts the same arguments that Appellant relied upon in his brief. The single distinct challenge is that the magistrate judge failed to evaluate the possibilities and alternatives available for E.L.C.'s rehabilitation.

It is clearly established in this Circuit that, in the absence of exceptional circumstances, arguments which could have been timely raised, but were not, will be rejected. See, e.g., Sandstrom v. ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990). Without doubt, Appellant's supplemental arguments all could have been raised in his original brief. Nevertheless, it is evident from the record that the magistrate judge examined the alternatives for E.L.C.'s rehabilitation and concluded, based on the psychologist's report, that the adult system is better equipped to provide E.L.C. with the programs he needs.

the statute in weighing the transfer factors and in determining that E.L.C.'s transfer to adult status was in the interest of justice within the meaning of § 5032.  Accordingly, the order of the district court is **AFFIRMED.**